## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

ABQ UPTOWN, LLC,
a Delaware Limited Liability Company,

   Plaintiff,

vs.              No. CIV 13-0416 JB/KK

DAVIDE ENTERPRISES, LLC,
a New Mexico Limited Liability Company;
DAWN DAVIDE; and
CHRISTOPHER LUTTRELL,

   Defendants.

## MEMORANDUM OPINION AND AMENDED ORDER[1]

**THIS MATTER** comes before the Court on Plaintiff ABQ Uptown, LLC's Motion for

Order to Show Cause Why the Court Should Not Order the Sanction of Default Against

Defendant Davide, filed July 23, 2014 (Doc. 47)("Motion").  The Court held a hearing on

October 28, 2014.  The primary issue is whether Defendants Davide Enterprises, LLC's, Dawn

Davide's, and Christopher Luttrell's untimely and incomplete discovery responses were in bad

faith and prejudiced Plaintiff ABQ Uptown, LLC to the extent that the Court should grant it a

default judgment.  The Court finds that the late disclosure has caused ABQ Uptown, LLC some

prejudice, but the Court believes that prejudice may be cured by ordering the Defendants to

amend again their answer to Interrogatory No. 9.  The Court concludes that Davide Enterprises,

---

[1]On March 3, 2015, the Court entered an order denying Plaintiff ABQ Uptown, LLC's
Motion for Order to Show Cause Why the Court Should Not Order the Sanction of Default
Against Defendant Davide, filed July 23, 2014 (Doc. 47).  See Order, filed March 7, 2015 (Doc.
64)("March 7, 2015, Order").  In the March 7, 2015, Order, the Court said that it "may . . . at a
later date issue a memorandum opinion more fully detailing its rationale for this decision."
March 7, 2015, Order at 1.  This Memorandum Opinion and Amended Order is the promised
opinion.

LLC, Davide, and Luttrell did not submit their discovery responses untimely and incomplete out of bad faith or willful misconduct, and, therefore, the Court will not grant ABQ Uptown, LLC a default judgment.  If Davide Enterprises, LLC, Davide, and Luttrell have not already provided ABQ Uptown, LLC a complete list of Davide Enterprises, LLC's tax preparers, they must do so immediately.  Accordingly, the Court will grant the Motion in part and deny it in part.

## FACTUAL BACKGROUND

This case is about Davide Enterprises, LLC's alleged breaches of its lease with ABQ Uptown, LLC for a retail property at the ABQ Uptown Shopping Center in Albuquerque, New Mexico.  See Amended Complaint, filed May 13, 2014 (Doc. 43)("Complaint").  On March 17, 2010, Davide Enterprises, LLC entered into a lease with Hunt Uptown, LLC to open a salon and spa in building 12 of the ABQ Uptown Shopping Center ("the Premises").  Complaint ¶ 6, at 2 (citing Shopping Center Lease by and between Hunt Uptown, a New Mexico limited liability company, Landlord, and Davide Enterprises, a New Mexico limited liability company, Tenant, filed May 3, 2013 (Doc. 1-2)("Lease")).[2]  Davide and Luttrell are equity interest holders in Davide Enterprises, LLC and are personal guarantors of Davide Enterprises, LLC's obligations under the Lease.  See Complaint ¶¶ 9-10, at 3.  On July 15, 2011, ABQ Uptown, LLC succeeded in interest Hunt Uptown, LLC's rights and duties under the Lease.  See Complaint ¶ 11, at 3.

The Lease is for a term of three years, with a gross rent of six percent of Davide Enterprises, LLC's gross sales in the first year, and ten percent of gross sales for the second and third years.  See Complaint ¶ 12, at 3.  The Lease provides that

> Tenant shall keep full, complete and proper books, records and accounts
> . . . of its daily Gross Sales, both for cash and on credit, of each separate

---

[2]The Lease's pagination is inconsistent with CM/ECF's.  The Court will use the Lease's pagination -- the black number on the bottom and in the middle of each page -- rather than CM/ECF's -- the blue number on the top and in the middle of each page.

department and concessionaire at any time operated in the Premises . . . .  Tenant
shall retain such Records for not less than three years after the end of the calendar
year to which they pertain.  Landlord and its agents and employees shall have the
right at any and all times, during regular business hours, to examine and inspect
all of the books and records of Tenant, including any sales or privilege tax records
pertaining to the business of Tenant, for the purpose of investigating and verifying
the accuracy of any statement of Gross Sales.

. . . Landlord may cause an audit of the business and records of Tenant to be made
by a certified public accountant of Landlord's selection, and if the statement of
Gross Sales made to Landlord for any period shall be found to be inaccurate, there
shall be an adjustment and one party shall pay to the other on demand such sums
as may be necessary to settle in full the accurate amount of the Gross Rent that
should have been paid to Landlord for the period or periods covered by such
inaccurate statement or statements.

Complaint ¶¶ 13-14, at 3-4 (quoting Lease at 7)(internal quotation marks omitted).  The Lease

further provides that ABQ Uptown, LLC may terminate the Lease on a ninety-day notice after

the first year.  See Complaint ¶ 15, at 4 (citing Lease at 2).

The Lease identifies Davide and Luttrell as Guarantors.  See Complaint ¶ 31, at 7 (citing

Lease at 1).  On March 17, 2010, concurrent with the Lease's execution, Davide and Luttrell

executed a Guaranty in favor of Hunt Uptown, LLC, which was duly notarized.  See Complaint

¶ 32, at 7 (citing Guaranty, filed May 13, 2014 (Doc. 43-2)("Guaranty")).  The Guaranty states:

Unconditional Guaranty.   Guarantor unconditionally and irrevocably
guarantees to Landlord and the successors and assigns of the Landlord the full and
punctual payment, performance and observance by tenant of all the terms,
covenants and conditions in the Lease to be kept, performed or observed by
Tenant.  Without limiting the foregoing, Guarantor guarantees the performance or
payment of any liability of Tenant to Landlord accruing under the Lease for any
period preceding as well as any period following the term of the Lease. If, at any
time, Tenant defaults in the performance or observance of any of the terms,
covenants, or conditions in the Lease to be kept, performed or observed by
Tenant, including, without limitation, the payment of any Base Rent, Tenant's
Proportionate Share, or other charge, Guarantor will keep, perform and observe
the same, as the case may be, in Tenant's place and stead.

. . . .

If Landlord transfers its interest in the Lease (other than as collateral assignment for security, until the holder thereof exercises its rights thereunder), "Landlord", as used in this Guaranty, shall thereupon mean Landlord's successors and assigns . . . .

      Joinder; Statute of Limitations.  Guarantor agrees that Guarantor may be joined in any action against Tenant in connection with the obligations of Tenant under the Lease as covered by this Guaranty and recovery may be had against Guarantor in any such action, or Landlord may enforce the Obligations of Guarantor hereunder without first taking any action whatsoever against Tenant or its successors and assigns, and landlord may pursue any other remedy or apply any security it may hold.  Guarantor hereby waives all rights to assert or plead at any time any statute of limitations as relating to the Lease, the obligations of Guarantor hereunder, and any and all surety defenses or other defenses in the nature thereof.

. . . .

Joint and Several Liability.  If more than one person signs below as Guarantor, the term "Guarantor", as used herein, shall include all of the undersigned and each and every provision of this Guaranty shall be binding on each and every one of the undersigned jointly and severally and landlord shall have the right to join one or all of them in any proceeding or to proceed against them in any order.

. . . .

      Attorneys' Fees.  If Landlord enforces Guarantor's obligations hereunder by legal proceedings, Guarantor shall pay to Landlord all costs incurred, including without limitation reasonable attorneys' fees and litigation expenses.

. . . .

      WAIVER OF JURY TRIAL.  IN THE INTEREST OF OBTAINING A SPEEDIER AND LESS COSTLY HEARING OF ANY DISPUTE, EACH LANDLORD AND GUARANTOR HEREBY EXPRESSLY WAIVES TRIAL BY JURY IN ANY ACTION, PROCEEDING, COUNTERCLAIM OR CROSSCLAIM BROUGHT BY EITHER PARTY AGAINST THE OTHER AND ANY RIGHTS TO A TRIAL BY JURY UNDER ANY STATUTE, RULE OF LAW OR PUBLIC POLICY IN CONNECTION WITH ANY MATTER WHATSOEVER ARISING OUT OF OR IN ANY WAY RELATING TO THIS GUARANTY OR THE AGREEMENT.

Complaint ¶¶ 33-38, at 7-9 (quoting Guaranty at 1-3)(internal quotation marks omitted).

On September 25, 2012, ABQ Uptown, LLC sent Davide Enterprises, LLC a Notice of Termination of Lease and Demand to Vacate by December 31, 2012.  See Complaint ¶ 17, at 4 (citing Notice of termination of Lease Demand to Vacate by December 31, 2012 (dated Sept. 25, 2012), filed May 3, 2013 (Doc. 1-3)("Notice 1")).  Notice 1 stated: "Tenant must vacate the Premises and surrender possession thereof to Landlord in the condition required by Section 19.1 of the Lease on or before the Termination Date (i.e., December 31, 2012)."  Complaint ¶ 17, at 4 (quoting Notice 1 at 1)(internal quotation marks omitted).

Thereafter, Davide Enterprises, LLC failed to pay rent for at least the months of November, 2012, and December, 2012.  See Complaint ¶ 18, at 4.  Davide Enterprises, LLC thus owes ABQ Uptown, LLC a minimum of approximately $24,821.08 in rent payments.  See Complaint ¶ 18, at 4.  The rent amount that Davide Enterprises, LLC owes is approximate, because it failed to provide ABQ Uptown, LLC with certified "Gross Sales" reports for at least the months of November, 2012, and December, 2012, as § 5.2(a) of the Lease requires. Complaint ¶ 19, at 5.  In late December, 2012, Davide Enterprises, LLC hired a contractor to remove permanent improvements, improvements, and fixtures from the Premises.  See Complaint ¶ 20, at 5.

On December 28, 2012, ABQ Uptown, LLC notified Davide Enterprises, LLC in writing of its obligations under § 19.1 of the Lease.  See Complaint ¶ 21, at 5 (citing Letter from Michael Hurley, Litigation Paralegal for ABQ Uptown, LLC to La Bella Uptown, LLC (dated Dec. 28, 2012), filed May 3, 2013 (Doc. 1-4)("Notice 2")).  Notice 2 said that § 19.1 provides as follows:

> Upon the expiration or termination of this Lease of Tenant's right to possession, Tenant shall surrender the Premises in a clean undamaged condition.  Tenant shall not remove permanent improvements that were provided by Landlord at the commencement of this Lease and shall not remove permanent improvements later installed by Tenant unless directed to do so by Landlord.  All fixtures or improvements constructed or installed by Tenant at the Premises except for

Tenant's trade fixtures and equipment shall be the property of Landlord. All light fixtures and HVAC equipment, plumbing equipment, hot water heaters, fire suppression and sprinkler systems, wall coverings, carpeting and drapes and other fixtures located in or serving the Premises, except Tenant's trade fixtures and equipment whether installed by Tenant or landlord, shall remain at the Premises at the expiration or termination of this Lease without compensation, allowance or credit to Tenant.  Tenant shall promptly remove Tenant's trade fixtures and equipment and repair any damage to the Premises caused by such removal.  If Tenant fails to perform any repairs or restoration or fails to remove any items from the Premises as required hereunder, Landlord may do so, and tenant shall pay Landlord the cost thereof upon demand.  All property removed from the Premises by Landlord hereunder may be handled, discarded or stored by Landlord at Tenant's expense, and Landlord shall in no event be responsible for the value, preservation or safekeeping thereof.  All such property, at Landlord's option, shall be conclusively deemed to have been conveyed by tenant to landlord as if by bill of sale without payment by landlord.  If Landlord arranges for storage of any such property, Landlord shall have a lien against such property for costs incurred in removing and storing same.

Complaint ¶ 21, at 5-6 (quoting Notice 2 at 1-2)(internal quotation marks omitted)(citing Lease at 15).

Davide Enterprises, LLC vacated the Premises in December, 2012.  See Complaint ¶ 22, at 6.  Christopher Alba, a valuation expert that ABQ Uptown, LLC hired, has identified a number of permanent improvements, improvements, and fixtures that Davide Enterprises, LLC removed from the Premises in breach of the Lease when it vacated the Premises.  See Complaint ¶ 23, at 6 (citing Report: La Bella Uptown Reconstruction Valuation Investigation (dated Nov. 15, 2013), filed May 13, 2014 (Doc. 43-1)("Valuation Report")).  Alba estimates that replacing these items and restoring the Premises to a clean and undamaged condition would cost approximately $496,000.00.  See Complaint ¶ 23, at 6 (citing Valuation Report at 3).

On January 3, 2013, ABQ Uptown, LLC sent an electronic-mail transmission to Davide Enterprises, LLC concerning its failure to pay rent and report its sales to ABQ Uptown, LLC from October, 2010, through December, 2010.  See Complaint ¶ 24, at 6 (citing Electronic-Mail Transmission from Cindy Parrish/Simon, Accounts Receivable Analyst, to Dawn Davide (dated

Jan. 3, 2013), filed May 3, 2013 (Doc. 1-5)("Notice 3")).   Notice 3 also advised Davide

Enterprises, LLC that, if ABQ Uptown, LLC did not receive the outstanding amount by the

following business day, it would default on the Lease.  See Complaint ¶ 24, at 6 (citing Notice 3

at 2).   On January 15, 2013, ABQ Uptown, LLC sent Davide Enterprises, LLC a notice of

default, which specifies an outstanding balance of $24,821.08 and unquantified damages for

Davide Enterprises, LLC's violations of § 19.1 of the Lease.  See Complaint ¶¶ 25-26, at 6

(citing Notice of Default at 1, filed May 3, 2013 (Doc. 1-6)("Notice 4")).  Davide Enterprises,

LLC's failures to pay these amounts constitute "Events of Default" under the Lease.  Complaint

¶ 27, at 6 (citing Lease at 16).

> The Lease grants ABQ Uptown, LLC the right to
>
> [r]ecover all costs, expenses and attorneys' fees (including without limitation litigation expenses, expert witness fees, and service of process fees) incurred by Landlord in connection with enforcing this Lease, recovering possession, reletting the Premises or collecting amounts owed, including, without limitation, costs of alterations, brokerage commissions, and other costs incurred in connection with any reletting.

Complaint ¶ 28, at 7 (quoting Lease at 17).  Davide Enterprises, LLC has not paid ABQ Uptown,

LLC the outstanding amount on the Lease.  See Complaint ¶ 29, at 7.   Nor has Davide

Enterprises, LLC, reimbursed ABQ Uptown, LLC for its removal of the permanent

improvements, improvements, and/or fixtures, or for the repair and restoration of the Premises

for the damages that Davide Enterprises, LLC caused when it vacated the Premises.   See

Complaint ¶ 29, at 7.

The Lease provides that "IN ANY LITIGATION BETWEEN LANDLORD AND

TENTANT, THE MATTER SHALL BE DECIDED BY A JUDGE SITTING WITHOUT A

JURY, AND ACCORDINGLY EACH PARTY HEREBY WAIVES ITS RIGHT TO A JURY

TRIAL."  Complaint ¶ 30, at 7 (quoting Lease at 20)(capitalization in Lease)(internal quotation marks omitted).

## PROCEDURAL BACKGROUND

ABQ Uptown, LLC filed this case on May 3, 2013, asserting five causes of action: (i) breach of contract, see Complaint ¶¶ 39-50, at 9-10 (Count I); (ii) breach of the implied covenant of good faith and fair dealing, see Complaint ¶¶ 51-58, at 10-11 (Count II); (iii) demand for accounting and audit, see Complaint ¶¶ 59-62, at 11-12 (Count III); (iv) unjust enrichment, see Complaint ¶¶ 63-72, at 12-13 (Count IV); and (v) debt and money due, see Complaint ¶¶ 73-82, at 13-14 (Count V).  ABQ Uptown, LLC seeks the following relief: (i) damages from the Defendants for Davide Enterprises, LLC's "breaches and wrongful acts, including without limitation the amount of unpaid Gross Rent owed" to ABQ Uptown, LLC, the cost of replacing permanent improvements, improvements, and/or fixtures that Davide Enterprises, LLC removed upon vacating the Premises, and the cost of restoring the Premises to a clean undamaged condition, Complaint at 14-15; (ii) an accounting of all gross rent and other expenses that Davide Enterprises, LLC owes ABQ Uptown, LLC over the Lease's term, see Complaint at 15; (iii) an audit of ABQ Uptown, LLC's business and records "to settle in full the accurate amount of the Gross Rent" that Davide Enterprises, LLC owes ABQ Uptown, LLC, Complaint at 15 (internal quotation marks omitted); (iv) a judgment against Davide Enterprises, LLC, Luttrell, and Davide for ABQ Uptown, LLC's costs, expenses, and attorney's fees, as the Lease provides, see Complaint at 15; (v) pre- and post-judgment interest, see Complaint at 15; and (vi) such other relief as the Court deems proper, see Complaint at 15.

1.      **ABQ Uptown, LLC's Initial Discovery Requests and Davide Enterprises, LLC's Responses.**

On December 2, 2013, ABQ Uptown, LLC served its first set of discovery requests on Davide Enterprises, LLC, which included: (i) the Plaintiff's First Set of Interrogatories to Defendant Davide Enterprises, LLC ("1st Interrogatories"); (ii) the Plaintiff's First Set of Requests for Admissions to Defendant Davide Enterprises, LLC ("1st RFA"); and (iii) the Plaintiff's First Set of Requests for Production to Defendant Davide Enterprises, LLC ("1st RFP"). See Certificate of Service, filed December 2, 2013 (Doc. 27). On January 2, 2014, ABQ Uptown, LLC received Davide Enterprises, LLC's responses. See Answers to Plaintiff ABQ Uptown, LLC's First Set of Interrogatories to Defendant Davide Enterprises, LLC, filed May 23, 2014 (Doc. 29-1)("Response to 1st Interrogatories");[3] Answers to Plaintiff ABQ Uptown, LLC's First Set of Requests for Admissions to Defendant Davide Enterprises, LLC, filed January 23, 2014 (Doc. 29-2)("Response to 1st RFA"); Answers to Plaintiff ABQ Uptown, LLC's First Set of requests for Production to Defendant Davide Enterprises, LLC, filed January 24, 2014 (Doc. 30-1)("Response to 1st RFP").

The Response to the 1st Interrogatories states, in pertinent part:

**INTERROGATORY No. 1** requested the following information:

On November 15, 2013, Plaintiff served Defendant with Plaintiff's Rule 26(a)(2) Expert Witness Disclosure. Included in that disclosure was the "La Bella Uptown Reconstruction Valuation Investigation" ("Report"). The Report's "Keyplan" and "Fixture Table" identify with specificity the items removed by Defendant (or Defendant's agents) when Defendant vacated the Premises in December 2012. Copies of the Keyplan and Fixture Table included in the Report are attached hereto for reference as Exhibit A and Exhibit B, respectively.

---

[3]The Court will use the internal pagination of Davide Enterprises, LLC's discovery responses -- that is, the numbers on the bottom and the middle of each page -- rather than CM/ECF's pagination -- the numbers on the top and in the middle of each page.

A.    Do you contend that the Keyplan's and Fixture Table's identification of items removed by Defendant (or Defendant's agents) when Defendant vacated the Premises in December 2012 is inaccurate or incorrect in any way, whether as to item type, price, quantity, or location(s) from which the item(s) was/were removed?

B.    If you answered "yes" to subpart A of this interrogatory, please state the principal and material facts upon which you base your contention that the Keyplan's and Fixture Table's identification of items removed by Defendant (or Defendant's agents) when Defendant vacated the Premises in December 2012 is inaccurate or incorrect in any way, including without limitation, by identifying items (by type, price, quantity, and location) removed by Defendant (or Defendant's agents) not on the list, as well by identifying items (by type, price, quantity, and location) listed as removed on the Keyplan/Fixture Table, which you contend were not actually removed, or were not accurately identified in any respect.

C.    Please list the name, address, and telephone number of each person whose testimony supports your contentions in this Interrogatory.

**RESPONSE:**

**A.    The fixture table (Exhibit B) prepared by Plainitff's expert is a complete fiction.  It totally misrepresents the items that were in the space and therefore has no factual relation to what was removed.**

**B.    This subpart is objected to.  Plaintiff has the burden of proving its allegations.  It is not Defendant's job to prove the negative of Plaintiff's position.  Plaintiff must put forth evidence that Defendant removed items that were not trade fixtures or the property of Defendant.  If Plaintiff cannot even identify what was removed, it cannot prove that Defendant removed anything it was not entitled to remove under the lease.**

**C.    Dawn Davide designed, selected or purchased every item that was removed.**

. . . .

- 10 -

**INTERROGATORY No. 3.**  In paragraphs 7, 8, and 9 of your Answer, you contend the following:

**AFFIRMATIVE DEFENSES**

7.      Duress
8.      Payment and offsets.
9.      Unclean Hands

A.      Please state the principal and material facts upon which you base your purported enumerated affirmative defenses of [duress, payment, offsets, and unclean hands, including without limitation, computations as to damages allegedly sustained by you or offsets owed to you as claimed in your Answer, and all documents you used to compute your claimed damages or offsets.

B.      Please list the name, address, and telephone number of each person whose testimony supports your contentions in this Interrogatory.

**ANSWER: The defense of duress is dropped. This rest of this answer will be supplemented in the very near future.**

. . . .

**INTERROGATORY No. 5.** Please identify all exhibit(s) which you intend to offer into evidence at the trial on the merits of this case.

**ANSWER:**

**1.      All exhibits (1-13) identified by Plaintiff in its initial disclosure.**

**2.      Photographs of La Bella Spa taken during the move out.**

**3.      July 2009 termination agreement between La Bella Uptown, LLC and Hunt Uptown, LLC. Defendant is looking for the documents described in the recitals of the termination agreement. When found they will be provided.**

**4.      List of fixtures taken out of the spa at the termination of the Hunt Uptown lease.**

**5.      Invoice for repairing electrical work paid by Davide Enterprises, LLC which was responsibility of ABQ Uptown. There may be more such invoices for plumbing and ventilation which were connected to the Melting Pot and other landlord repairs.**

**6.      Rebuttal and impeachment documents as needed.**

. . . .

**INTERROGATORY No. 6.** Please state the name, address, home and work telephone numbers, official title (if any), and relationship to any party of all fact witnesses who may be called upon to testify in support of Defendant's claims or defenses in this action.  For each witness identified, please state the nature and substance of the testimony which is expected will be given by each such witness, and identify by Bates number or other description copies of any materials which Defendant contends relate to or support such testimony.

**ANSWER:**

**1.      Jeremy J. Strife**
**c/o Marcus J. Rael, Jr.**
**Frank T. Apodaca**
**Counsel for ABQ Uptown, LLC**
**500 Marquette Avenue NW, Suite 700**
**Albuquerque, NM 87102**
**(505) 242-2228**

**Mr. Strife is the Area General Manager for Plaintiff, and is expected to testify as to the merits of Plaintiff's claims against Defendant, and as to damages caused by Defendant upon vacating the Premises.**

**2.      Daniel Bunch**
**c/o Marcus J. Rael, Jr.**
**Frank T. Apodaca**
**Counsel for ABQ Uptown, LLC**
**500 Marquette Avenue NW, Suite 700**
**Albuquerque, NM 87102**
**(505) 242-2228**

**Mr. Bunch is the Operations Supervisor for Plaintiff and is expected to testify as to as to the merits of Plaintiff's claims against Defendant, and as to damages caused by Defendant upon vacating the Premises.**

**3.      Dawn Davide**
**c/o Alex Chisholm**
**PO box 4455**
**Albuquerque, NM 87196**
**505-998-6627**

Ms. Davide . . . will testify about the trade fixture which she installed and took out twice under the lease.  She will explain what she took and what she left each time. She will provide a history of the leased premises, its various managers and its problems.

      4.     Someone from Hart Construction
              2919 Second St., Ste. B
              Albuquerque, NM 87107
              505-345-4001

Hart Construction prepared Exhibit F attached to Plaintiff's complaint, Hart Construction will be asked to explain the assumptions and preconditions of its Budget Estimate totaling $414,055.

      5.     Various, unidentified employees of the Plaintiff and the previous owner, Hunt Uptown, LLC.

Plaintiff is the most re[c]ent landlord and came to the project without a complete understanding of what constituted trade fixtures within Defendant's spa and under the terms of the lease.  These employees will help clarify the issue of trade fixtures.

      6.     Diane Biesler
              Address currently unknown
              Believed to be living in Washington or Oregon

Ms. Biesler ran the crew comprised of the individuals named in #4 when the fixtures were taken out the first time.

      7.     Nicole Romero
              c/o Alex Chisholm
              PO Box 4455
              Albuquerque, NM 87196
              505-998-6627

Ms. Romero worked for Davide Enterprises, LLC in various capacities.  She will testify about what fixtures were taken out the first time La Belle Uptown moved out of the premises and what fixtures were taken out the second time.  She will also testify about the day to day operations of La Belle Uptown.

      8.  Any witness identified by Plaintiff.

      9.  Any witness needed for rebuttal, impeachment or foundation.

      10. Any yet to be named expert witness by either party.

. . . .

**INTERROGATORY No. 9.** Identify all accounting firms or individual accountants who have provided any accounting, bookkeeping, or auditing services for Defendant for the period of January 1, 2005 to present.

**ANSWER: NONE, except for tax preparation.**

**INTERROGATORY No. 10.** Please identify all bank accounts that Defendant has maintained by listing the name of the account, the bank where the account was maintained (by name, address, routing number, and phone number), and the specific account number for the period of January 1, 2005 to present.

**ANSWER: See request for production #19.**

. . . .

**INTERROGATORY No. 15.** Identify with specificity (including name, address, and telephone number) all persons involved in any way in the removal of items removed by Defendant from the Premises in December 2012, as identified in Keyplan and Fixture List included in Plaintiff's Expert Report, or as otherwise identified in Defendant's Answer to Interrogatory No. 1.

**ANSWER: Numerous members of the Albuquerque Police Department and Fire Department. A list is being complied.**

. . . .

**INTERROGATORY No. 20.** Please identify in detail all storage facilities, buildings, or other locations rented, owned or otherwise used in any way by Defendant for purposes of storage or use of the items removed by Defendant from the Premises in December 2012, identified in Plaintiff's Expert Report, or as otherwise identified in Defendants Answer to Interrogatory No. 1, including without limitation identification of each location where these items may be inspected as of the time you provide your answer to this Interrogatory.

**ANSWER: Various garages around the metro area.**

Response to 1st Interrogatories at 1-14.

The Response to 1st RFA states, in pertinent part:

**REQUEST No. 1.** On November 15, 2013, Plaintiff served Defendant with Plaintiff's Fed. R. Civ. Proc. 26(a)(2) Expert Witness Disclosure. Included in that disclosure was the La Bella Uptown Reconstruction Valuation Investigation

- 14 -

(Report). The Report's Keyplan and Fixture Table identify with specificity the items removed by Defendant (or Defendant's agents) when Defendant vacated the Premises in December 2012. Copies of the Keyplan and Fixture Table included in the Report are attached hereto as Exhibit A and Exhibit B, respectively.  Admit that the Fixture Table correctly identifies the items removed by Defendant (or by Defendant's agents) from the Premises in December 2012.

Admit: _____ Deny: X

Response to 1st RFA at 2.

The Response to 1st RFP states, in pertinent part:

**REQUEST FOR PRODUCTION No. 2.** In paragraphs 7, 8, and 9 of your Answer, you contend the following

**AFFIRMATIVE DEFENSES**

7.    Duress
8.    Payment and offsets.
9.    Unclean Hands

A.    Please produce copies of any and all documents, reports, statements, affidavits, etc., which you or your attorneys possess which support your purported enumerated affirmative defenses of Duress, Payment and offsets, and Unclean Hands, as well as computations as to damages allegedly sustained by you as claimed in your Answer, and all documents you used to compute your damages.

B.    If you claim that you have provided Plaintiff with copies of the documents, reports, statements, affidavits, etc., which are responsive to this request for production, please list the document(s) you have provided Plaintiff, specifying the name, author, recipient, date and content of each and every document you produced to Plaintiff which is responsive to this request.

**RESPONSE:**

**The defense of duress is dropped.**
**Documents are available for copying.**

**REQUEST FOR PRODUCTION No. 3.** Please produce copies of all of Tenant's federal and state income tax returns for the years 2010, 2011, and 2012, including all supporting forms, schedules, and work papers. Also, please sign the IRS Form 4506, Request for Copy of Tax Form Return, IRS Form 8821, Tax Information Authorization, and State of New Mexico Tax Information Authorization Form, which are attached to the end of this pleading.

**RESPONSE: Defendant objects to signing the IRS forms. It is a redundant and unnecessary request as the tax information requested is available for copying. The 2012 taxes have not yet been filed.**

. . . .

**REQUEST FOR PRODUCTION No. 10.** From the period of Defendant's inception to present, please produce all organizational documents of Defendant, including incorporation documents, articles of incorporation, bylaws, shareholder agreements and all similar documents relating to the formation of Davide Enterprises, LLC and its organizational structure, as well as all amendments thereto.

**RESPONSE: AVAILABLE FOR COPYING**

. . . .

**REQUEST FOR PRODUCTION No. 19.** For the period January 1, 2010 to present, please produce all bank statements for all accounts in the name of Defendant.

**RESPONSE: THESE ITEMS ARE AVAILABLE FOR COPYING AND CONSTITUTE 1¾ INCHES OF PAPER.**

. . . .

**REQUEST FOR PRODUCTION No. 21.** For the period January 1, 2010 to present, please produce any and all 1) general ledgers; 2) monthly closing reports; 3) accounts payable, accounts receivable, or trial balances; and 4) bank reconciliations that Defendant has prepared, or which were prepared on its behalf, since inception, reflecting in whole, or in part, operations, activities, revenues or receipts, expenses, sales, transactions, losses and/or bank statements for all accounts in the name of Defendant.

**RESPONSE: THIS INFORMATION IS AVAILABLE FOR COPYING AND CONSTITUTES SEVERAL INCHES OF PAPER.**

Response to 1st RFP at 4-8.

On January 15, 2014, ABQ Uptown, LLC sent a letter to the Defendants' counsel requesting the Defendants to supplement their discovery responses to provide more complete information and comply with the Federal Rule of Civil Procedure. <u>See</u> Letter from Frank

Apodaca, ABQ Uptown, LLC's counsel, to Alex Chisholm (dated Jan. 15, 2014), filed January 23, 2014 (Doc. 29-4)("Jan. 15, 2014, Ltr.").  After the Defendants failed to respond to the Jan. 15, 2014, Ltr., ABQ Uptown, LLC filed two motions to compel on January 23, 2014, asking the Court to compel the Defendants to supplement their responses to Interrogatory Nos. 1, 3, 5, 6, 9, 10, 15 and 20, Request for Admission No. 1, and Request for Production Nos. 2, 3, 10, 19, and 21.  See Plaintiff ABQ Uptown, LLC's Motion to Compel No. I: Requiring Defendant to Respond to Plaintiff's Interrogatories and Requests for Admissions and Requesting Sanctions, filed January 23, 2014 (Doc. 29)("MTC 1"); Plaintiff ABQ Uptown, LLC's Motion to Compel No. II: Requiring Defendant to Produce Documents in Response to Plaintiff's Requests for Production and Requesting Sanctions, filed January 24, 2014 (Doc. 30)("MTC 2").

The Court held a hearing on the MTC 1 and the MTC 2 on April 9, 2014.  See Clerk's Minutes Before District Judge James O. Browning, filed April 9, 2014 (Doc. 40).  On May 9, 2014, the Court entered an Order, in which it: (i) granted the MTC 1 and 2; (ii) ordered Davide Enterprises, LLC to provide complete answers under rule 33 of the Federal Rules of Civil Procedure to Interrogatory Nos. 1, 3, 5, 6, 9, 10, and 15 no later than July 1, 2014; (iii) ordered Davide Enterprises, LLC to provide a complete answer under rule 36 to Request for Admission No. 1 no later than July 1, 2014; (iv) ordered Davide Enterprises, LLC to provide complete responses and production to Request for Production Nos. 2, 3, 10, 19, and 21, no later than July 1, 2014; (v) ordered Davide Enterprises, LLC to provide ABQ Uptown, LLC with tax information releases corresponding to Request for Production No. 3 by May 20, 2014; (vi) ordered Davide Enterprises, LLC to provide dates no later than May 30, 2014, for ABQ Uptown, LLC to depose Davide and Luttrell; and (vii) ordered Davide Enterprises, LLC to pay ABQ

Uptown, LLC's reasonable costs incurred in making the MTC 1 and the MTC 2.  See Order at 1-5, filed May 9, 2014 (Doc. 42)("May 9, 2014, Order").

The Defendants did not provide deposition availability dates to ABQ Uptown, LLC by May 30, 2014.  See Motion ¶ 15, at 4.  The Defendants also did not supplement their discovery answers and responses to ABQ Uptown, LLC by July 1, 2014, but instead served ABQ Uptown, LLC with its supplemental discovery answers and responses on July 2, 2014.  See Davide Enterprises, LLC Supplemental Answers to Interrogatories Request for Admissions and Request for Production, filed July 23, 2014 (Doc. 47-2)("2nd Response to Discovery Requests").[4]  The 2nd Response to Discovery Requests includes the Defendants' supplemental answers to Interrogatory Nos. 9 and 10:

> **INTERROGATORY No. 9.** Identify all accounting firms or individual accountants who have provided any accounting, bookkeeping, or auditing services for Defendant for the period of January 1, 2005 to present.
>
> **ANSWER: NONE, except for tax preparation**
>
> **Supplemental answer:** Same answer, no accounting firms or individuals. Whoever did the tax preparation will show up on the tax returns.
>
> **INTERROGATORY No. 10.** Please identify all bank accounts that Defendant has maintained by listing the name of the account, the bank where the account was maintained (by name, address, routing number, and phone number), and the specific account number for the period of January 1, 2005 to present.
>
> **ANSWER: See request for production #19.**
>
> **Supplemental answer:** After doing a diligent search Defendant can find no information on bank accounts.

2nd Response to Discovery Requests at 13.

---

[4]The Defendants combined their supplemental discovery responses to the interrogatories, request for admissions, and request for production, in a single twenty-two-page document. Given the length of the Defendants' supplemental responses, the Court will not reproduce them in their entirety here.

2.      **The Motion.**

ABQ Uptown, LLC filed the Motion on July 23, 2014.  See Motion at 1.  In the Motion, ABQ Uptown, LLC asks the Court to award default judgment in its favor, because of the Defendants' failure to fully respond to discovery requests.  See Motion *passim*.  Specifically, ABQ Uptown, LLC highlights the Defendants' supplemental responses to Interrogatory Nos. 9 and 10, and to Request for Production 10, as insufficient to pass muster under the Federal Rules of Civil Procedure.  See Motion at 4.

ABQ Uptown, LLC explains that, under rule 37(b), the Court can order default judgment when a party fails to obey an order to provide or permit discovery.  See Motion at 5 (citing Fed. R. Cir. P. 37(b)(2)(A)(vi); Klein-Becker USA, LLC v. Englert, 711 F.3d 1153, 1159 (10th Cir. 2013)(holding that a district court may issue sanctions, including "default judgment against the disobedient party," when a party disobeys a discovery order)).  ABQ Uptown, LLC says that, to determine if default judgment is an appropriate sanction, courts consider: (i) the degree of actual prejudice to the opposing party; (ii) the amount of interference with the judicial process; and (iii) the culpability of the litigant.  See Motion at 6-7 (citing FDIC v. Daily, 973 F.2d 1525, 1530 (10th Cir. 1992); Ocelot Oil Corp. v. Sparrow Indus., 847 F.2d 1458, 1465 (10th Cir. 1988)).

ABQ Uptown, LLC says that the Defendants' conduct has prejudiced its ability to meaningfully pursue this case and prepare for trial.  See Motion at 7.  ABQ Uptown, LLC contends that Davide Enterprises, LLC has been "extremely evasive" in its discovery obligations from this case's onset.  Motion at 7.  ABQ Uptown, LLC states that, for example, because Davide Enterprises, LLC did not produce the Guaranty in its initial disclosures, ABQ Uptown, LLC had to obtain it through third-party discovery.  See Motion at 8.  ABQ Uptown, LLC argues that Davide Enterprises, LLC's evasiveness continued even after the Court ordered it to respond

fully to ABQ Uptown, LLC's discovery requests.  <u>See</u> Motion at 8.  ABQ Uptown, LLC says, without further explanation: "This has prejudiced Plaintiff's ability to effectively and efficiently pursue this case and prepare for trial."  Motion at 8.

ABQ Uptown, LLC urges that Davide Enterprises, LLC will not suffer prejudice if the Court enters default judgment.  <u>See</u> Motion at 8.  ABQ Uptown, LLC says that the Defendants have represented that they are judgment proof.  <u>See</u> Motion at 8.  ABQ Uptown, LLC asserts that, consequently, ABQ Uptown, LLC would not be able to collect on a judgment against them if the Court orders default judgment.  <u>See</u> Motion at 8.  ABQ Uptown, LLC contends that the entry of a default judgment against the Defendants "would simply avoid the cost of litigation to all parties, preserve judicial economy," and "preserve judicial economy."  Motion at 8.

ABQ Uptown, LLC argues that the Defendants' refusal to comply with the May 9, 2014, Order has significantly interfered with the judicial process.  <u>See</u> Motion at 9.  ABQ Uptown, LLC points out that the Defendants have still failed to fully respond to the discovery requests, thus forcing the Court to intervene yet again to force them to do so.  <u>See</u> Motion at 9.  ABQ Uptown, LLC asserts: "This delay and non-compliance, when viewed in the totality of the circumstances from the onset of the case, has ultimately and significantly delayed the progress of this case, resulting in the vacating of scheduling order deadlines and the trial date."  Motion at 9.

ABQ Uptown, LLC asserts that the Defendants' evasiveness and non-compliance with the May 9, 2014, Order establishes the requisite culpability for the Court to enter default judgment against them.  <u>See</u> Motion at 9-10.  ABQ Uptown, LLC points out that the United States Court of Appeals for the Tenth Circuit has held that a district court's failure to warn a defendant of the possibility of sanctions was "of no consequence," and affirmed the district court's award of default judgment.  Motion at 10.  ABQ Uptown, LLC contends that one of the

main issues in this case is that the Defendants may not have any assets to sufficiently satisfy a judgment against any of them individually.  See Motion at 10.  ABQ Uptown, LLC argues that it is apparent that the Defendants have undertaken an evasive approach to discovery to protect hidden assets.  See Motion at 10.  ABQ Uptown, LLC says that, otherwise, the Defendants "would have nothing to lose by simply entering into a stipulated judgment."  Motion at 10. According to ABQ Uptown, it is "highly unlikely that[,] as accomplished business owners, Defendants know as little about their bank accounts, or who performs their booking keeping [sic] services, as they claim in their discovery responses."  Motion at 10.

      **3.**      **The Response.**

      The Defendants responded to the Motion on August 7, 2014.  See Defendants' Response to Motion to Show Cause Why the Court Should Not Order the Sanction of Default Judgment Against Defendant Davide, filed August 7, 2014 (Doc. 48)("Response").  The Response states, in pertinent part:

> Davide Enterprises, LLC have given Plaintiff all the discovery information it has to give.  Davide understands that Plaintiff is frustrated with what it perceives as a dearth of information[,] but Davide has nothing more to produce.  Davide understands that Plaintiff may have expected better, more complete, or more incriminating discovery responses[,] but what Davide has was very little and that is what Plaintiff received.
>
> Defendant Davide informed the Court during a motion hearing that Dawn Davide was ill and undergoing surgery, that the surgery and recovery would cause complications in meeting specific deadlines.
>
> The short delay in responding to some deadlines has caused no prejudice to Plaintiff.  For instance, the July 2, 2014 letter to Plaintiff provides that Defendants are available for depositions on specific days.  In context, this means any Monday, Tuesday or Wednesday at certain times.  Before July 2, Defendants' schedule between work, the illness, medical appointments and caring for a handicapped child simply meant that they could not commit to a date certain. After July, things became somewhat less hectic and time management became more predictable.  Plaintiff has made no claim that Defendants have refused to be deposed on any date that lands on a Monday, Tuesday or Wednesday.  In fact[,]

Plaintiff's only response to the July 2, 2014 is the current motion.  Plaintiff has made no attempt to depose Defendants.  Any prejudice Plaintiff complains of is self-inflicted.

       At the bottom of page 7 Plaintiff claims that Defendant did not provide the guarantees in response to its first round of discovery.  This is simply not true.  Defendant produced all contract documents.  Plaintiff must have had its own set of contract documents to write the complaint.  Plaintiff misplaced the contract documents and wants to blame Defendant.

       Plaintiff's current motion is the result of the realization that it cannot win the lawsuit on the facts.  Even if Plaintiff has an eye witness [sic] to the move out, (something it has asserted to the Court but has not provided any name to Defendants) the fact pattern and the value of the items is problematic.  Defendants' response to discovery has demonstrated this.  So, Plaintiff asks the Court to grant it default judgment on procedural grounds, because Defendants will not be prejudiced.  This is a novel approach to disappointing discovery responses.  But sometimes discovery is disappointing.  Sometime[s] discovery informs you that you have a bad case.  In any event[,] Defendants have been neither elusive nor evasive and have responded to the best of their ability.  If Plaintiff has any doubts about this, let it depose the Defendants.

Response at 1-3.

    **4.**    **The Reply.**

    ABQ Uptown, LLC replied to the Response on August 7, 2014.  <u>See</u> Plaintiff ABQ Uptown, LLC's Reply to Defendants' Response to the Motion for Order to Show Cause Why the Court Should Not Order the Sanction of Default Against Defendant Davide, filed August 25, 2014 (Doc. 51)("Reply").  In the Reply, ABQ Uptown, LLC reiterates that it had to obtain the Guaranty through third-party discovery to Hunt Building Company rather than receiving it from the Defendants.  <u>See</u> Reply at 2.  ABQ Uptown, LLC says that, accordingly, the Defendants' assertion that it provided the Guaranty "is simply not true."  Reply at 2.  ABQ Uptown, LLC argues that, moreover, the Defendants have also failed to address their deficient interrogatory answers, such as to Interrogatory Nos. 9 and 10.  <u>See</u> Reply at 2.  In ABQ Uptown, LLC's view, the Defendants' conduct has stalled this lawsuit and forced ABQ Uptown, LLC "to perform the

legal equivalent of pushing a rock up a hill."  Reply at 3.  ABQ Uptown, LLC concludes that the

Defendants' approach to discovery demonstrates that they have a bad-faith approach to litigation.

See Reply at 3.

ABQ Uptown, LLC highlights NHL v. Metropolitan Hockey Club, Inc., 427 U.S. 639

(1976), in which the Supreme Court of the United States upheld a district court's dismissal of a

case for the plaintiffs' failure to comply with a discovery order.  See Reply at 3.   According to

ABQ Uptown, the Supreme Court held that,

> "[w]hile the Court of Appeals stated that the District Court was required to
> consider the full record in determining whether to dismiss for failure to comply
> with discovery orders, . . . we think that the comprehensive memorandum of the
> District Court supporting its order of dismissal indicates that the court did just
> that."   The Supreme Court determined that the record demonstrated that the
> district court was extremely patient in its efforts to allow the respondents ample
> time to comply with its discovery orders. However, the Supreme Court ultimately
> determined that, "Not only did respondents fail to file their responses on time, but
> the responses which they ultimately did file were found by the District Court to be
> grossly inadequate."

Reply at 5 (citations omitted).

ABQ Uptown, LLC asserts that the lessons which the Supreme Court teaches in NHL v.

Metropolitan Hockey Club, Inc. "should not be lost in the present case."  Reply at 7.  ABQ

Uptown, LLC contends that the Defendants' conduct has stymied this case.  See Reply at 8.

ABQ Uptown, LLC argues that it has suffered considerable prejudice, and that the Court should

put an end to the Defendants' "willful noncompliance and bad faith approach to litigation."

Reply at 8.

5.      **The October 28, 2014, Hearing**.

The Court held a hearing on October 28, 2014.  See Transcript of Hearing, taken October 28, 2014 ("Tr.").[5]  The hearing was brief, with the parties largely reiterating their arguments from the briefing.  ABQ Uptown, LLC specifically pointed to the Defendants' amended answers to Interrogatory Nos. 9 and 10 as deficient.  See Tr. *passim*.  ABQ Uptown, LLC argued that, because Davide is an accomplished real estate developer with multiple businesses, it is difficult to believe that she "did not remember or bother to ask someone information about her own bank accounts unless she deals with a cash-only business."  Tr. at 3:24-4:3 (Gardner).  The Court noted that, "typically what people do is they move to compel and they show me in great detail what's the problem with the answers, and that wasn't done here, so you've given me an example out of 10, but I mean that requires me to . . . call them a liar."  Tr. at 4:22-5:2 (Court).  The Court said: "I don't know what to do with that. . . .  [I]t seems kind of difficult for the Court to grant a default judgment when basically I'd have to call one side a liar and yet there is no proof that they're lying."  Tr. at 5:3-7 (Court).  The Court added that, for example, the Defendants' supplemental response to Interrogatory No. 1 is about four pages long.  See Tr. at 6:21-24 (Court).  ABQ Uptown, LLC said that it has no issues with the Defendants' amended answer to Interrogatory No. 1, but instead found the Defendants' amended answers to Interrogatory Nos. 9 and 10 insufficient.  See Tr. at 7:3-5 (Gardner).

Addressing the Defendants' amended answer to Interrogatory No. 9, ABQ Uptown, LLC said that it wants to know who prepared Davide Enterprises, LLC's tax returns.  See Tr. at 7:13-19 (Gardner).  The Defendants responded that, although they would identify their tax preparer, they did not have an accountant.  See Tr. at 8:2-10 (Chisholm); id. at 11:2-11

---

[5]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final version  may contain slightly different page and/or line numbers.

(Chisholm, Court).  The Defendants said that Davide Enterprises, LLC has no record of its bank accounts, and, if it had a bank account, it lost any records for the account.  See Tr. at 8:13-15 (Chisholm).  The Defendants added that they gave ABQ Uptown, LLC "a bunch of stuff of business records . . ., probably maybe in total one banker[']s box maybe a little bit more."  Tr. at 8:15-17 (Chisholm).  The Defendants said:

> It's just they don't have what they think they need.  And you know I appreciate their frustration more than they think, but I can't give them what my clients don't have.  And that's the gist of the problem.  They're not being evasive they're just poor record keepers is all.  But I'm sure if they want the tax preparer's name I'm sure it's on one of the tax documents we gave them.  But if they want us to provide that and I'm sure there is probably more than one over that time period, but . . . [t]hey got those tax returns.  Ms. Davidoff signed on behalf of the LLC releases for the IRS.  So they have the name of that tax preparer, assuming they got the stuff from the IRS.  So we haven't hidden the ball here. . . .  I don't know what's to say on number nine or the bank statements on those two issues.  They just don't have those records.

Tr. at 8:18-9:10 (Chisholm).

ABQ Uptown, LLC clarified that it is not just asking for the tax preparer, but it also wants anyone that served as a bookkeeper or accountant for Davide Enterprises.  See Tr. at 9:13-18 (Gardner).  ABQ Uptown, LLC says that, as to the bank accounts, it would like any information that the Defendants have -- such as a bank account number or the bank's name -- which would help ABQ Uptown, LLC subpoena those records.  See Tr. at 9:19-24 (Gardner).  The Court said that it did not think it could order the Defendants to amend their amended answer to Interrogatory No. 10, because both the Defendants and their attorney signed it under oath.  See Tr. at 25:9-10:1 (Gardner).  The Court explained that, if that is the Defendants' response, ABQ Uptown, LLC would have to accept it.  See Tr. at 10:1-7 (Gardner).

ABQ Uptown, LLC said that the Defendants' amended answers to Interrogatory Nos. 9 and 10 were the "main two" about which it had issues.  Tr. at 11:15-18 (Gardner).  ABQ

Uptown, LLC said that, if these supplemental answers are the best it will be able to get, it "would like to propound written discovery to the individual defendants . . . and take their depositions within 30 days after that" to get the case going.  Tr. at 11:19-22 (Gardner).  The Court concluded the hearing by stating:

> I'm certainly not limiting any of the discovery that you're allowed to do[;] I'm going to deny the motion for a default judgment.  When I read through it looks like it's not a complete failure to provide discovery.  Not knowing bank accounts does jump out but if they've said that under oath and Mr. Chisholm signed it under Rule 11, then right at this stage, there is not much that the Court can do with that.  So I'll deny the motion for the sanction of default but without prejudice to you renewing motion for sanctions down the road if you're not getting the discovery that you need, entitled to.

Tr. at 12:14-13:1 (Court).

## RELEVANT LAW REGARDING RULE 37 SANCTIONS

Rule 37(b) states that, if a party fails to obey "an order to provide or permit discovery, including an order under Rule 26(f), 35 or 37(a), the court where the action is pending may issue further just orders," including:

(i)      directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

(ii)     prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

(iii)    striking pleadings in whole or in part;

(iv)    staying further proceedings until the order is obeyed;

(v)     dismissing the action or proceeding in whole or in part;

(vi)    rendering a default judgment against the disobedient party; or

(vii)   treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A).  "Determination of the correct sanction for a discovery violation is a fact-specific inquiry that the district court is best qualified to make."  Ehrenhaus v. Reynolds, 965 F.2d 916 (10th Cir. 1992).  Although the court has discretion to choose an appropriate sanction, the sanction must be just.  See The Procter & Gamble Co. v. Haugen, 427 F.3d 727, 738 (10th Cir. 2005)(citation omitted).

## ANALYSIS

The Court concludes that awarding default judgment at this stage would be inappropriate. ABQ Uptown, LLC argues that a default judgment is the appropriate sanction for the Defendants' failure to fully respond to ABQ Uptown, LLC's discovery requests.  Specifically, ABQ Uptown, LLC finds the Defendants' amended answers to Interrogatory Nos. 9 and 10 insufficient.  The Defendants disagree, arguing that, although ABQ Uptown, LLC may have expected better, more complete discovery responses, the Defendants "have given Plaintiff all the discovery information it has to give."  Response at 1.  The Defendants assert that their discovery responses, therefore, do not amount to a willful failure to comply with their discovery obligations, and thus a default judgment is not an authorized sanction here.  The Court agrees with the Defendants.

Although the Court concludes that the Defendants' amended answer to Interrogatory No. 9 is insufficient, it does not believe that default judgment is an appropriate remedy for the Defendants' belated discovery responses, because there is no evidence that the Defendants' incomplete answer to Interrogatory No. 9 and general untimeliness was a result of "willful misconduct."  Ehrenhaus v. Reynolds, 965 F.2d at 920.  Additionally, the Tenth Circuit directs district courts to only grant a default judgment on the basis of a party's discovery abuse when "the aggravating factors outweigh the judicial system's strong predisposition to resolve cases on

their merits," and the aggravating factors are not so egregious as to warrant a default judgment here.  Procter & Gamble Co. v. Haugen, 427 F.3d at 738.

The Tenth Circuit has held that a district court may not dismiss a complaint with prejudice as a sanction for failing to obey a discovery order without considering the non-exhaustive factors listed in Ehrenhaus v. Reynolds[6]:

> Before imposing dismissal as a sanction, a district court should . . . evaluate the following factors on the record: (1) the degree of actual prejudice to the [other party]; (2) the amount of interference with the judicial process; . . . (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions.

Procter & Gamble Co. v. Haugen, 427 F.3d 727 at 738 (10th Cir. 2005).

Addressing the first two factors, the Court does not doubt that the Defendants' late and incomplete disclosures prejudiced ABQ Uptown, LLC in some regard, but that prejudice and the late disclosure's interference with the judicial process is not severe.  ABQ Uptown, LLC states that the Defendants' evasiveness "has prejudiced Plaintiff's ability to effectively and efficiently pursue this case and prepare for trial," but ABQ Uptown, LLC does not offer any specific examples of the prejudice it has suffered.  Accordingly, this factor weighs only slightly in favor of awarding default judgment.[7]

---

[6]Although the Tenth Circuit enunciated these factors in the context of dismissing a plaintiff's complaint for the plaintiff's failure to comply with discovery request, the Court has previously considered these factors in the context of awarding default judgment as a discovery sanction for a defendant's failure to comply with the plaintiff's discovery requests.  See Solis-Marrufo v. Bd. of Comm'rs, No. CIV 11-0107 JB/KBM, 2013 WL 1658304, at *34 (D.N.M. Apr. 4, 2013)(Browning, J.).

[7]The Court has previously awarded attorney's fees in lieu of default judgment to the party that seeks discovery from a dilatory party.  See Solis-Marrufo v. Bd. of Comm'rs, 2013 WL 1658304, at *45-47.  Although ABQ Uptown, LLC requested attorney's fees in the prayer of the Motion and of the Reply, it did not argue for fees strenuously, because it was primarily seeking a home run with the remedy of default; at the hearing, ABQ Uptown, LLC did not pursue fees at

Furthermore, that the Defendants served their supplemental discovery responses one day after the Court's deadline -- i.e., on July 2, 2014, rather than July 1, 2014 -- and provided a single incomplete amended answer to Interrogatory No. 9 has not interfered significantly with the judicial process.   When considering whether there has been interference with the judicial process, courts have often looked to whether the willful abuse of the discovery process caused delays in the judicial proceedings.  In <u>Glaser v. Jordan</u>, No. CIV 09-01758 REB/MJW, 2010 WL 2742794 (D. Colo. July 9, 2010), for instance, the court found that there was substantial interference with judicial process, as "[p]rogress toward the resolution of Glaser's case has been brought to a standstill by Glaser's inexplicable and unexcused failure to provide discovery." 2010 WL 2742794, at *3.  Similarly, in <u>Hall v. Wal-Mart</u>, No. CIV 09-01410 WYD/CBS, 2009 WL 6337957 (D. Colo. Dec. 18, 2009), the court determined that there had been substantial interference with the judicial process, reasoning that the plaintiff's "continuing noncompliance with the court's orders has increased the workload of the court and interfered with the administration of justice," and noting that "[m]ore than once the court has reviewed the file and set hearings in the case" for which the plaintiff failed to appear.  2009 WL 6337957, at *3. Finally, in <u>Mobley v. McCormick</u>, 160 F.R.D. 599 (D. Colo. 1995), <u>aff'd</u>, 69 F.3d 548 (10th Cir. 1995), the district court determined there had been a substantial interference with the judicial process, stating: "[I]t is sufficient to say that [the plaintiff] repeatedly ignored court orders and thereby hindered the court's management of its docket and its effort to avoid unnecessary burdens on the court and the opposing party."  160 F.R.D. at 601 (internal quotation marks omitted).  No such facts are present here.  The Defendants have neither repeatedly ignored the

---

all.  In any event, the Court will not award attorney's fees, because the only defect with the Defendants' discovery responses was their incomplete answer to Interrogatory No. 9, and that minor defect alone does not justify shifting fees.

Court's orders nor bought this case "to a standstill" by filing their supplemental answers a day late and failing to provide complete information in the answer to Interrogatory No. 9. Accordingly, factors one and two weigh against awarding a default judgment.

Turning to the third factor, the Defendants' conduct is not highly culpable, if culpable at all. ABQ Uptown, LLC asserts that, in addition to the Defendants' lack of timeliness in responding to ABQ Uptown, LLC's discovery requests, the Defendants' amended answers to Interrogatory Nos. 9 and 10 are insufficient. The Defendants' supplemental answers to Interrogatory Nos. 9 and 10 state:

> **INTERROGATORY No. 9.** Identify all accounting firms or individual accountants who have provided any accounting, bookkeeping, or auditing services for Defendant for the period of January 1, 2005 to present.
>
> **ANSWER: NONE, except for tax preparation**
>
> **Supplemental answer:** Same answer, no accounting firms or individuals. Whoever did the tax preparation will show up on the tax returns.
>
> **INTERROGATORY No. 10.** Please identify all bank accounts that Defendant has maintained by listing the name of the account, the bank where the account was maintained (by name, address, routing number, and phone number), and the specific account number for the period of January 1, 2005 to present.
>
> **ANSWER: See request for production #19.**
>
> **Supplemental answer:** After doing a diligent search Defendant can find no information on bank accounts.

2nd Response to Discovery Requests at 13.

As the Defendants say in the Response and said at the hearing, their amended answers to Interrogatory Nos. 9 and 10 included "all the discovery information it has to give." Response at 1. The Defendants explained: "They're not being evasive they're just poor record keepers is all." Tr. at 8:18-20 (Chisholm). ABQ Uptown, LLC counters that, because Davide is an accomplished real estate developer with multiple businesses, it is difficult to believe that she "did

not remember or bother to ask someone information about her own bank accounts unless she deals with a cash-only business." Tr. at 3:24-4:3 (Gardner).

In effect, ABQ Uptown, LLC asks the Court to conclude that the Defendants are lying when they say they have no additional information to provide. The Court is reluctant to reach such a conclusion. The Defendants have sworn to the truth and accuracy of their supplemental answers under oath, and ABQ Uptown, LLC has offered no evidence to contradict their answers. That ABQ Uptown, LLC would like to have more information or different information does not, by itself, establish that the amended answers are untruthful or incomplete. Moreover, it does not appear that the Defendants have completely failed to provide discovery responses. The Defendants' 2nd Response to Discovery Requests is twenty-two pages long and, as an example, provides a four-page answer to Interrogatory No. 1.

The Defendants' conduct does not demonstrate the same bad faith and willful misconduct seen in other cases where the Tenth Circuit has found dismissing an action appropriate. Unlike the plaintiff in Archibeque v. Atchison, Topeka and Santa Fe Railway Co., 70 F.3d 1172 (10th Cir. 1995), who lied about her prior medical treatment and accidents in a workers' compensation case, see 70 F.3d at 1173, the Defendants have not willfully misinformed ABQ Uptown, LLC regarding any information that ABQ Uptown, LLC sought in its discovery requests. Their failure is one of a lack of completeness and timeliness, and not one of purposeful concealment. As it stands, the Defendants' supplemental discovery responses were insufficient in only one minor respect -- that they failed to provide their tax preparers' names. As the Defendants promised at the hearing to provide this information, that defect will also be remedied.

Nor did the Defendants fabricate documents in support of their theory of the case, as the plaintiff did in support of her claims for disability benefits in Garcia v. Berkshire Life Insurance

Co. of America, 569 F.3d 1174 (10th Cir. 2009).  See id. at 1177-79.  Last, just as the plaintiff's misstatements during discovery were not carefully crafted to place the plaintiff in a tactical advantage in Maples v. Vollmer, No. CIV 12-0294 JB/RHS, 2013 WL 1009558 (D.N.M. Mar. 5, 2013)(Browning, J.), the Defendants do not appear to have withheld this information in the hopes of securing a tactical advantage, because they attempted to point ABQ Uptown, LLC in the right direction by saying that it could find the information sought in Interrogatory No. 9 in Davide Enterprises, LLC's tax returns.  See 2013 WL 1009558, at *22-23.

The fourth and fifth factors also weigh against entering a default judgment.  Because the Court did not warn the Defendants in advance that, if they did not fully and timely respond to the MTC 1 and the MTC 2, they would suffer a default judgment, the fourth factor weighs against ABQ Uptown, LLC's requested relief.  Although ABQ Uptown, LLC requested attorney's fees in the prayer of the Motion and of the Reply, it did not argue for fees strenuously, because it was primarily seeking a home run with the remedy of default; at the hearing, ABQ Uptown, LLC did not pursue fees at all.  The Court will not award attorney's fees, because the only defect with the Defendants' discovery responses was their incomplete answer to Interrogatory No. 9, and that minor defect alone does not justify shifting fees.   Thus, the fifth factor is neutral.  Because the Defendants' failure to timely respond to ABQ Uptown, LLC's discovery requests, and incomplete answer to Interrogatory No. 9 were not the result of willful misconduct, and the Court will not order default judgment as a sanction.  See Procter & Gamble Co. v. Haugen, 427 F.3d at 738 ("Only when aggravating factors outweigh the judicial system's strong predisposition to resolve cases on their merits is dismissal an appropriate sanction.").  Based on the Ehrenhaus v. Reynolds factors, this case is not one where the aggravating factors outweigh the judicial system's strong predisposition to resolve cases on their merits.  Accordingly, a

default judgment is not an appropriate sanction, and the Court will deny ABQ Uptown, LLC's request.  As the Defendants promised at the hearing, however, they must amend again their answer to Interrogatory No. 9 to provide the names of Davide Enterprises, LLC's tax preparers. If the Defendants have not provided that information yet, they must do so immediately.

**IT IS ORDERED** that Plaintiff ABQ Uptown, LLC's Motion for Order to Show Cause Why the Court Should Not Order the Sanction of Default Against Defendant Davide, filed July 23, 2014 (Doc. 47), is denied in part and granted in part.  If Defendants Davide Enterprises, LLC, Dawn Davide, and Christopher Luttrell have not already provided Plaintiff ABQ Uptown, LLC a complete list of Davide Enterprises, LLC's tax preparers, they must do so immediately.

 

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Marcus J. Rael, Jr.
Douglas E. Gardner
Robles, Rael & Anaya
Albuquerque, New Mexico

     *Attorneys for the Plaintiff*

Alex Chisholm
Albuquerque, New Mexico

     *Attorney for the Defendants*